IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


WILLIAM G. WACKER,
        Petitioner,

vs.                                                    Case No.:  3:12cv367/LAC/EMT

MICHAEL D. CREWS,
        Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 1).  Respondent filed an answer and relevant portions of the state court record (doc. 15).  Petitioner filed a reply (doc. 23).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 15).[1]  Petitioner was charged in the Circuit Court in and for Santa Rosa County, Florida, Case No. 2006-CF-864, with one count of aggravated battery with great bodily harm and with

_____

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 15).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

possession and discharge of a firearm (Count 1), one count of aggravated assault by threat with possession of a firearm (Count 2), one count of battery (Count 3), and one count of actual possession of a firearm by a convicted felon (Count 4) (Ex. A at 17–18). Following a jury trial, he was found guilty as charged (Ex. A at 49–51, Exs. G, H, I). On November 20, 2007, Petitioner was adjudicated guilty and sentenced to a term of twenty-eight (28) years of imprisonment with a 25-year mandatory minimum and with 512 days of pre-sentence jail credit on Count 1, a term of three (3) years of imprisonment on Count 2, and a term of ten (10) years of imprisonment on Count 4, with all sentences running consecutively (Ex. A at 52–59, Ex. B). Petitioner was sentenced to time served on Count 3 (*id.*).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D07-6238 (Ex. J). The First DCA affirmed the judgment per curiam without written opinion on March 23, 2009, with the mandate issuing April 8, 2009 (Ex. M). Wacker v. State, 5 So. 3d 675 (Fla. 1st DCA 2009) (Table). Petitioner did not seek further review.

On November 9, 2009, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure, and a "Motion to Hold Ruling in Abeyance" (Exs. N, O). In an order rendered August 3, 2010, the state circuit court struck the Rule 3.850 motion as facially insufficient, without prejudice to Petitioner's filing an amended motion within thirty (30) days (Ex. R). Petitioner filed an amended motion on September 13, 2010 (Ex. S at 1–49). The state circuit court summarily denied it on April 8, 2011 (*id.* at 87–104). Petitioner appealed the decision to the First DCA, Case No. 1D11-3188 (Ex. T). The First DCA affirmed the judgment per curiam without written opinion on January 11, 2012, with the mandate issuing February 7, 2012 (Exs. V, W). Wacker v. State, 77 So. 3d 1262 (Fla. 1st DCA 2012) (Table).

Petitioner filed the instant federal habeas action on July 25, 2012 (doc. 1).

II.    STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective

Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19. In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2] The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id., 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000). In employing this test, the Supreme Court has instructed

---

[2] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.  Moreover, where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. *See* Henderson v. Campbell, 353 F.3d 880, 890 n. 15 (11th Cir. 2003).

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.*

Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87, 178 L. Ed. 2d 624 (2011)). The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. See Gill, supra at 1291 (citing Harrington, 131 S. Ct. at 786). Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. See Harrington, 131 S. Ct. at 786; see also Gill, supra, at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* Gill, 633 F.3d at 1292. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claims.

III.    PETITIONER'S CLAIMS

A.    Ground One: "Trial counsel rendered ineffective assistance for failing to properly argue that Justin Barker was essential to Petitioner's case as an exculpatory witness or to oppose the exclusion of witness Barker as a key witness in support of the defense."

Petitioner asserts his theory of defense at trial with regard to the aggravated battery charge (Count 1), was that the victim, Jeanette Deese, was shot accidentally (doc. 1 at 4, 5–6).[3] Petitioner asserts the basis for this defense was that while Petitioner and Mack Robinson, the victim of the aggravated assault and battery counts (Counts 2 and 3), were struggling over a shotgun in the possession and control of Robinson, the shotgun discharged and struck Deese in the leg, causing injury (*id.*). Petitioner alleges he told defense counsel that the shooting of Ms. Deese was accidental, and that Mack Robinson told Justin Barker it was accidental (*id.*). Petitioner alleges in the trial of his co-defendant, Michael Hatcher, Justin Barker testified that Mack Robinson told him the shooting of Ms. Deese was accidental, and neither Hatcher nor Petitioner intended to injure her (*id.*). Petitioner states the jury in Hatcher's case found him not guilty as a principal to the aggravated battery against Ms. Deese (*id.*).

Petitioner asserts on October 4, 2007, the trial court entered an amended order "granting the State's motion in limine to exclude any reference to Barker's exculpatory testimony" (this is Petitioner's characterization of the trial court's order) (doc. 1 at 5). Petitioner contends at the pre-trial hearing on the State's motion in limine, defense counsel should have argued that Barker's testimony was admissible on the ground that Petitioner had a fundamental, substantive right to present an affirmative, viable defense that the shooting was accidental, and exclusion of Barker's testimony prevented him from presenting a complete defense (*id.* at 5–6). Petitioner argues Barker would have testified to "the same testimony as was given at Hatcher's trial—in that this was an accidental shooting and that Petitioner had no part in either touching, carrying, or discharging the firearm in a criminal manner" (*id.*). He argues Barker's testimony (that Mack Robinson stated the shooting was accidental) would have corroborated his own (Petitioner's) testimony, and it would have cast doubt on the State's case, because it would have undermined Mack Robinson's credibility at trial (*id.*). He contends without this corroborating evidence, the State was relieved of it burden of presenting evidence rebutting his affirmative defense (*id.*).

Petitioner contends if counsel had argued that exclusion of Barker's testimony violated his fundamental, substantive right to present a defense, there is a reasonable probability the court would

---

[3] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

have permitted Barker to testify, and the jury would have acquitted him of Count 1, just as Mr. Hatcher's jury acquitted Hatcher (doc. 1 at 5–6). Petitioner asserts he raised this claim as Issue Sixteen in his amended Rule 3.850 motion, and as Issue One in his appellate brief (*id.* at 4).

Respondent argues Petitioner generally raised this claim as Ground Sixteen in his amended Rule 3.850 motion; however, Petitioner asserts two arguments in his § 2254 petition that were not asserted in state court: (1) "An advocate would have observed that preclusion of Barker's testimony as 'prior inconsistent statements' was not exclusive, and Petitioner's substantive right to present a viable defense was sufficient to defeat the State's motion in limine"; and (2) "The result would have been different because credibility was the genuine issue at trial, and testimony that Mr. Robinson made material admissions against his interest in which he states that the event in question was an 'accident' calls into question the veracity of the State's entire case against Petitioner and demonstrates that a reasonable jury would have returned verdicts favorable to the Petitioner had Barker's testimony been presented." (doc. 15 at 6–7 (quoting doc. 1 at 6)). Respondent contends these two points were not exhausted (*id.*). Regarding the points that were presented to and adjudicated by the state courts, Respondent contends Petitioner failed to demonstrate the state court's adjudication was contrary to or an unreasonable application of clearly established federal law, or based upon an unreasonable determination of the facts (*id.* at 7–9).

In response to Respondent's exhaustion argument, Petitioner contends he proceeded pro se in state court, and according to the Second Circuit's standard in <u>Daye v. Attorney Gen.</u>, 696 F.2d 186, 194 (2d Cir. 1982), he satisfied the "fair presentation" requirement (doc. 23 at 15–16).[4] Alternatively, Petitioner contends he is entitled to review on the merits of his claim pursuant to <u>Martinez v. Ryan</u>, — U.S. —, 132 S. Ct. 1309, 1318 (2012), because the state court failed to appoint counsel during the Rule 3.850 proceeding (*id.* at 16–17).

---

[4] In <u>Daye</u>, the Second Circuit explained, "the ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution, include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." 696 F.2d at 194.

Upon review of the arguments in Petitioner's amended Rule 3.850 and his post-conviction appellate brief (Ex. S at 31–32, Ex. T at 3–6), the undersigned concludes that Petitioner fairly presented his claim to the state courts. In his federal petition, he argues defense counsel should have argued that the trial court's prohibiting the defense from offering Justin Barker as a witness solely for the purpose of eliciting his prior inconsistent statement (namely, Barker's prior deposition testimony that Mack Robinson told him the shotgun discharged accidentally (*see* Ex. Q at 24, 27–28, 30), which was inconsistent with Barker's testimony at Hatcher's trial that his deposition testimony was based on his assumption as to what Robinson meant, not his recollection of what Robinson actually said) violated his constitutional right to present a complete defense. He also argues he was prejudiced by counsel's alleged error, because Barker's testimony would have not only supported his defense that the shooting was accidental, it would have cast doubt on the State's case, specifically, Mack Robinson's testimony (from which the jury could have reasonably inferred the shooting was intentional).

Petitioner argued in his amended Rule 3.850 motion, in relevant part:

Defendant complains that Counsel failed to properly argue for this witness's [Justin Barker's] inclusion at trial. Had counsel performed effectively, there is more than a reasonable probability that Barker would have been permitted to testify, and that an acquittal would have resulted on the shooting charges against Defendant.

At all times, and for all purposes, Barker was ready, willing, and available to testify for Defendant. Barker would have corroborated the fact that Mack Robinson told him that this was an accident which would have lent credibility to Defendant's version of events regarding self-defense. Additionally, with the exclusion of Barker's testimony at trial, the State could not have rebutted Defendant's defense as was done during closing argument.

. . . .

Counsel should have argued that to exclude the exculpatory testimony and /or evidence that Barker would present, violated Defendant's fundamental rights under the Sixth Amendment to present a defense. More importantly, it has been long held that a criminal Defendant is entitled to present a defense, even though it may be his only defense, and apparently spurious in nature.

Any reasonably effective trial counsel when presented with the same set of factual circumstances as here would have immediately argued these constitutional claims and set forth on the record that any unfair prejudice was greatly outweighed by the substantive right of the Defendant to present a defense.

(Ex. A at 30–31).  In Petitioner's appellate brief to the First DCA, he argued counsel should have opposed the preclusion of Barker's testimony on the ground that it deprived him of a meaningful opportunity to present a complete defense; and because of counsel's incompetence, his sole defense to the charge was "negated" (Ex. T at 3–6).

The Eleventh Circuit has held that courts should exercise flexibility in determining whether habeas petitioners have satisfied the exhaustion requirement.  *See* Pope v. Sec'y for Dep't of Corr., 680 F.3d 1271, 1286 (11th Cir. 2012) (citing Cummings v. Dugger, 862 F.2d 1504, 1507 (11th Cir. 1989); Henry v. Dep't of Corr., 197 F.3d 1361, 1367 (11th Cir. 1999) ("The exact presentation of the claims in the state and federal courts may vary some.")).  In other words, an issue is exhausted if "the reasonable reader would understand [the] claim's particular legal basis and specific factual foundation" to be the same as it was presented in state court.  Kelley, 377 F.3d at 1344–45.  In other words, "[t]he ground relied upon must be presented face-up and squarely; the federal question must be plainly defined."  *Id.* at 1345 (quoting Martens v. Shannon, 836 F.2d 715, 717 (1st Cir. 1988)) (internal quotation marks omitted).  In the ineffectiveness context, the Eleventh Circuit said:

> [A] general allegation of ineffective assistance or a specific allegation of ineffective assistance [made in state court] wholly unrelated to the ground on which the claim ultimately depends [in federal court] will [not] immunize a petitioner from a finding of procedural default.

Ogle v. Johnson, 488 F.3d 1364, 1369 (11th Cir. 2007) (emphasis added).

Here, the failure-to-argue-against-the-motion-in-limine claim as pled in Petitioner's federal habeas petition raises the same legal issue that was presented to the state court—that but for counsel's failure to argue that precluding Justin Barker's testimony affected his constitutional right to present a complete defense, there is a reasonable probability the result of his trial would have been different. While his federal petition certainly expands on the prejudice argument he asserted in state court (in state court he did not specifically argue counsel's alleged error affected that his ability to cast doubt on the State's case; he argued only that it affected his ability to present an affirmative defense), his argument in state court involved the same issue raised in the context of an ineffective assistance of counsel claim. The federal question was thus "plainly defined," *see* Kelley, 377 F.3d at 1345, so that the state courts were made fully aware of Petitioner's ineffectiveness claim.

1.      Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). To obtain relief under <u>Strickland</u>, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 687–88. If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697.

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." <u>Jones v. Campbell</u>, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing <u>Chandler v. United States</u>, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)). The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." <u>Strickland</u>, 466 U.S. at 688–89. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do." <u>Jones</u>, 436 F.3d at 1293 (citing <u>Chandler</u>, 218 F.3d at 1314–15 n.15). Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." <u>Rogers v. Zant</u>, 13 F.3d 384, 386 (11th Cir. 1994). Counsel's performance is deficient only if it is "outside the wide range of professional competence." <u>Jones</u>, 436 F.3d at 1293 (citing <u>Strickland</u>, 466 U.S. at 690); <u>Lancaster v. Newsome</u>, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ." <u>Michael v. Crosby</u>, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting <u>Chandler</u>, 218 F.3d at 1317). Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'" *Id.* (quoting <u>Putman v. Head</u>, 268 F.3d 1223, 1244 (11th Cir. 2001)).

As to the prejudice prong of the <u>Strickland</u> standard, Petitioner's burden of demonstrating prejudice is high. *See* <u>Wellington v. Moore</u>, 314 F.3d 1256, 1260 (11th Cir. 2002). The Supreme

Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Id.* (quoting <u>Strickland</u>, 466 U.S. at 693). However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not, or prove by a preponderance of evidence," that counsel's errors affected the outcome. <u>Strickland</u>, 466 U.S. at 693–94. Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694. Indeed, it would be "contrary to" the law clearly established in <u>Strickland</u> for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence. <u>Williams v. Taylor</u>, 529 U.S. at 405–06.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. <u>Strickland</u>, 466 U.S. at 694–95. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. Further, when the claimed error of counsel occurred at the guilt stage of trial (instead of on appeal), <u>Strickland</u> prejudice is gauged against the outcome of the trial, not on appeal. *See* <u>Purvis v. Crosby</u>, 451 F.3d 734, 739 (11th Cir. 2006) (citing <u>Strickland</u>, 466 U.S. at 694–95).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. <u>Strickland</u>, 466 U.S. at 698; <u>Collier v. Turpin</u>, 177 F.3d 1184, 1197 (11th Cir. 1999).

> 2.     Federal Review of State Court Decision

The state circuit court cited the <u>Strickland</u> standard as the applicable legal standard (Ex. S at 88). The court adjudicated Petitioner's claim as follows:

> Defendant claims trial counsel failed to properly argue for the inclusion of Justin Barker as a witness for Defendant's case. Prior to trial, the State moved to exclude Mr. Barker from testifying for the defense on the basis that it would be a means for the defense to impeach him with his prior inconsistent deposition testimony

> supporting the defense that the shooting was accidental. (Exhibit H.) The motion was
> granted. (Exhibit I.) Defendant asserts counsel should have argued exclusion of the
> witness would violate Defendant's constitutional right to present a defense. This
> argument would have been inadequate to defeat the State's motion, and counsel was
> not ineffective for not making it.

(Ex. S at 99). Petitioner argued this issue on appeal of the court's decision (Ex. T at 3–6). The First

DCA affirmed without written opinion (Ex. V).

The record shows that prior to Petitioner's trial, the State moved in limine to prevent the

defense from "questioning or impeaching its own witness (Justin Barker) with an inconsistent

statement he made during a deposition which concerned a hearsay statement by one of the victims in

this case [Mack Robinson]." (Ex. A at 12). Relying on Florida law, and federal law interpreting Rule

607 of the Federal Rules of Evidence, the State argued the defense could not call Barker primarily to

adduce a prior inconsistent statement in the guise of impeachment (*id.* at 12–14). At the hearing on

the State's motion, the prosecutor stated he did not intend to call Barker as a witness (Ex. F at 193).

Petitioner's counsel stated he intended to call Barker as a defense witness "to refresh his recollection

as to the events that happened," that is, what Mack Robinson told him about the shooting (*id.* at

193–94, 198–99). The court initially verbally ruled, "At this particular point, unless something

develops differently, the motion in limine is going to be denied." (*id.* at 205). However, two days

later, the court entered an amended order after reviewing relevant authority, stating:

> . . . the State's Motion is GRANTED, subject to the limitation that this decision only
> applies to the testimony of Mr. Barker if he is solely being offered as a witness for the
> purpose of eliciting a "prior inconsistent statement" that would otherwise be
> inadmissible.

(Ex. A at 20).[5] Petitioner contends defense counsel should have argued that Barker's testimony as to

Mack Robinson's statements describing the firing of the shotgun was necessary to Petitioner's defense,

and his constitutional right to present a defense "trumped" any evidentiary rule that might have

otherwise excluded Barker's testimony (doc. 23 at 17–18). Petitioner cites <u>Davis v. Alaska</u>, 415 U.S.

---

[5] In its order granting the State's motion in limine, the trial court noted that in Hatcher's trial, Justin Barker had been called as a witness by the State and offered testimony that affirmatively harmed Hatcher's defense (*see* Ex. A at 20). The trial court also noted that in Hatcher's trial, the State did not object to Justin Barker's testimony on the ground that it was improper impeachment (*id.* at 19–20).

308 (1974), <u>Chambers v. Mississippi</u>, 410 U.S. 284, 294 (1973), and <u>Olden v. Kentucky</u>, 488 U.S. 227 (1988) in support of these arguments (*id.*).

"[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense," <u>Crane v. Kentucky</u>, 476 U.S. 683, 690, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986) (quoting <u>California v. Trombetta</u>, 467 U.S. 479, 485, 104 S. Ct. 2528, 81 L .Ed. 2d 413 (1984)), but the Supreme Court has also recognized that "'state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials,'" <u>Holmes v. South Carolina</u>, 547 U.S. 319, 324, 126 S. Ct. 1727, 164 L. Ed. 2d 503 (2006) (quoting <u>United States v. Scheffer</u>, 523 U.S. 303, 308, 118 S. Ct. 1261, 140 L. Ed. 2d 413 (1998)).  Only rarely has the Supreme Court held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence.  *See* <u>Nevada v. Jackson</u>, — U.S. —, 133 S. Ct. 1990, 1992, 186 L. Ed. 2d 62 (2013) (citing <u>Holmes</u>, 547 U.S. at 331 (rule did not rationally serve any discernible purpose); <u>Rock v. Arkansas</u>, 483 U.S. 44, 61, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987) (rule arbitrary); <u>Chambers v. Mississippi</u>, 410 U.S. 284, 302–03, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973) (State did not even attempt to explain the reason for its rule); <u>Washington v. Texas</u>, 388 U.S. 14, 22, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967) (rule could not be rationally defended)).

In <u>Olden</u> and <u>Davis</u>, two of the cases upon which Petitioner relies, the Supreme Court held that various restrictions on a defendant's ability to <u>cross-examine</u> witnesses violated the Constitution.  In <u>Olden</u>, the black defendant was prosecuted for kidnapping, rape and sodomy, and asserted a defense of consent.  488 U.S. at 229.  The trial court precluded the defense from cross-examining the white victim regarding her cohabitation with her black boyfriend, who was also a witness for the State, to show that victim, out of fear of jeopardizing her relationship with her boyfriend, lied when she told her boyfriend she had been raped, and to impeach the victim's testimony that she lived with her mother at the time of the sexual contact.  *Id.* at 229–30.  The Supreme Court held that the preclusion of the otherwise relevant impeachment evidence, on the basis of mere speculation that the jurors's racial biases would prejudice them against the victim, violated the defendant's Sixth Amendment right to confrontation of witnesses, because the excluded evidence had strong potential to demonstrate the falsity of the victim's testimony.  *Id.* at 232.

In <u>Davis</u>, the defendant, who was prosecuted for grand larceny and burglary, was precluded by a protective order from cross-examining a key prosecution witness to show that witness was on probation following an adjudication of juvenile delinquency, in an attempt to show that the witness was biased because of his vulnerable status. 415 U.S. at 317–18. The Court observed that, subject to "the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation . . . , the cross-examiner has traditionally been allowed to impeach, *i.e.*, discredit, the witness." *Id.* at 316. The Court emphasized that "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Id.* at 316–17.

Here, the trial court did <u>not</u> preclude the defense from cross-examining Mack Robinson regarding his description of the shooting. Nor did the trial court preclude the defense from calling Justin Barker as a witness to impeach the testimony of Mack Robinson or any other State witness. The trial court also did not preclude the defense from calling Barker to provide substantive, admissible evidence in support of the defense. The trial court only precluded the defense from calling Barker for the sole purpose of introducing his own prior statements during his deposition, which were otherwise inadmissible because they concerned Mack Robinson's hearsay statements. This exclusion of otherwise inadmissible evidence did not violate Petitioner's constitutional right to present a complete defense. Therefore, the state court reasonably concluded that defense counsel was not ineffective for failing to assert this argument in opposition to the State's motion in limine.

Further, defense counsel's failure to attempt to present Barker's testimony at trial by arguing that Barker was not being presented solely for the purposes of eliciting a prior inconsistent statement, because there was a "50/50" chance Barker would testify consistently with his deposition testimony (*see* doc. 23 at 18), was not deficient. In order to elicit the testimony Petitioner wanted the jury to hear, defense counsel would have had to ask Barker what Mack Robinson told him about the shooting, which would have been subject to a successful objection on hearsay grounds under Florida Statutes §§ 90.801, 90.802. Petitioner failed to show that no reasonable lawyer would have failed to call Barker under these circumstances. *See* <u>Rogers</u>, 13 F.3d at 386. Therefore, Petitioner is not entitled to relief on Ground One.

    B.    <u>Ground Two: "Trial counsel rendered ineffective assistance for failing to properly argue the motion in limine with specific factual assertions to suppress or exclude gun shells and ammunition on grounds of irrelevancy."</u>

Petitioner alleges on October 11, 2007, defense counsel filed a pre-trial motion in limine to exclude any reference to gun shells or ammunition found at co-defendant Hatcher's residence (doc. 1 at 4, 7–9).  He alleges defense counsel argued only that the evidence was prejudicial, without arguing that it was immaterial and irrelevant, and its probative value was substantially outweighed by its unfairly prejudicial effect, and without providing any authority to support his argument (*id.*). Petitioner states the shotgun used in the shooting was never recovered by law enforcement (*id.*).  He argues admission of the shotgun shells and ammunition allowed the jury to infer that co-defendant Hatcher or Petitioner possessed a shotgun matching the shells and ammunition, and brought the shotgun to the scene of the shooting (*id.*).  He contends had counsel properly argued the motion, the court would have excluded the ammunition and shotgun shells, and the jury would not have convicted him of Count 1 (*id.*).  Petitioner asserts he raised this issue as Issue Nineteen in his amended Rule 3.850 motion, and as Issue Two on appeal of the circuit court's denial of the motion (*id.* at 10).

Respondent contends Petitioner's arguments in his federal petition include considerably more factual and legal detail than the arguments in Issue Nineteen of his amended Rule 3.850 motion (doc. 15 at 10–12).  Respondent contends these arguments are not exhausted and should not be considered by this court (*id.*).  Respondent contends the state court's adjudication of Petitioner's exhausted arguments was not contrary to or an unreasonable application of clearly established federal law (*id.* at 13–14).

In Petitioner's reply, he contends he satisfied the exhaustion requirement by presenting his claim as follows:

> "TRIAL COUNSEL FAILED TO PROPERLY ARGUE THE MOTION IN LIMINE WITH SPECIFIC FACTUAL ASSERTIONS THAT WOULD HAVE COMPELLED THE TRIAL COURT TO SUPPRESS OR EXCLUDE THE AMMUNITION EVIDENCE AT TRIAL"

> Without the entry of the shotgun shells, and other ammunition discovered at Defendant's Co-Defendant's residence, the State could not have allowed the jury to "infer" that Defendant possessed and used a shotgun in these crimes and then his [sic] it.

> During Defendant's direct appeal in this cause, appellate counsel made an eloquent argument for this ammunition suppression.  Defendant hereby adopts and incorporates this argument into this claim.

The State Attorney General's Office claimed that this issue was not preserved due to the fact that the "facts" presented on appeal were not the ones argues [sic] at trial. Nowhere does the State attempt to defeat appellate Counsel's argument only that it was not presented.

In fact, had Counsel properly argued this point at trial, the ammunition would have been excluded. Counsel's failure has served to violate Defendant's constitutional rights under the United States and Florida Constitutions, protecting against ineffective assistance of counsel.

(doc. 23 at 5–6 (quoting Ex. S at 36–37)). Petitioner contends Florida law does not prohibit a defendant from adopting argument he previously made in an earlier proceeding in the same case; therefore, his adoption and incorporation of the arguments set forth in his brief on direct appeal was sufficient to assert those arguments in his amended Rule 3.850 motion (doc. 23 at 6). Petitioner additionally contends he is entitled to review of his claim pursuant to <u>Martinez</u>, 132 S. Ct. at 1318, because the state court failed to appoint counsel in the Rule 3.850 proceeding (*id.* at 6-8).

The undersigned concludes Petitioner's presentation of his claim in state court was sufficient to satisfy the exhaustion requirement. Therefore, the court will determine whether the state court's adjudication of the claim is entitled to deference under the AEDPA.

      1.    Clearly Established Federal Law

The <u>Strickland</u> standard, set forth *supra*, governs this claim.

      2.    Federal Review of State Court Decision

The state circuit court adjudicated Petitioner's claim as follows:

Defendant claims counsel was ineffective for failing to file a motion with specific factual assertions to exclude evidence of the ammunition found at the co-defendant's residence. Defendant improperly attempts to incorporate his appellate counsel's argument on this matter with his motion and does not otherwise state what facts should have been argued. This claim is therefore facially insufficient.

(Ex. S at 101). Petitioner appealed the decision to the First DCA (Ex. T at 7–10). The appellate court affirmed the lower court's decision without written opinion (Ex. V).

Petitioner contends the state court's denial of his claim as "facially insufficient" does not constitute an adjudication on the merits (doc. 23 at 11). He additionally contends the state court's ruling was contrary to or an unreasonable application of <u>Strickland</u>, or based upon an unreasonable determination of the facts, or both (*id.* at 11–14).

The state circuit court's denial of the claim as facially insufficient constituted an adjudication on the merits.  In disposing of the claim, the state court considered the sufficiency of the claim, focusing on whether Petitioner's allegations were sufficient to warrant relief under <u>Strickland</u>.  Although the court determined Petitioner improperly attempted to incorporate argument from his pleading on direct appeal, the court nevertheless evaluated the sufficiency of Petitioner's allegations and did not base it disposition of the claim on a state procedural bar.  Therefore, the state court's disposition was an adjudication on the merits.  *See* <u>Borden v. Allen</u>, 646 F.3d 785, 808–16 (11th Cir. 2011) (rejecting district court's conclusion that petitioner's ineffective assistance of counsel claims were procedurally barred where state court ruled that petitioner's vague assertions and unsupported conclusions were insufficient to withstand summary dismissal because they failed to contain the required specificity and full disclosure of the factual basis, and holding that state court's disposition was an adjudication on the merits; therefore, review of state court decision under deferential standard of AEDPA was appropriate); *see also, e.g.*, <u>Gaedtke v. Sec'y, Dep't of Corr.</u>, 369 F. App'x 12, 17 n.2 (11th Cir. 2010) (unpublished); <u>Harvey v. Tucker</u>, No. 3:09cv43/LAC/CJK, 2011 WL 5025540, at *17–18 (N.D. Fla. Sept. 27, 2011) (unpublished), *Report and Recommendation Adopted By*, 2011 WL 5025933 (N.D. Fla. Oct. 21, 2011).

The state court record shows that Petitioner's counsel filed a motion to suppress the ammunition and shotgun shells found in co-defendant Hatcher's residence or vehicle, on the ground that the probative value was outweighed by its prejudicial effect, pursuant to Florida Statutes § 90.403 (Ex. A at 22).  Counsel argued the evidence was found in Hatcher's residence and in a vehicle that was not Petitioner's and was different from the vehicle allegedly used by Petitioner and Hatcher during commission of the crimes (Ex. G at 4).  Therefore, counsel argued, its prejudicial effect outweighed its probative value (*id.*).  The prosecutor argued the evidence would show that Petitioner and Hatcher acted together, and fled the scene together in Petitioner's truck (*id.* at 5–6).  The prosecutor argued that when deputies arrived at the location where Petitioner and Hatcher fled, they observed two residences, one of which was Hatcher's residence where the shotgun shells and ammunition were found (*id.*).  The prosecutor argued the shells and ammunition were relevant, because the two men acted together in perpetrating the crimes (*id.*).

At trial, Mack Robinson testified that on June 17, 2006, the day of the shooting, he and his girlfriend, Jeanette Deese, were living together (Ex. G at 53–54). He testified he had known Petitioner for several years from their working together, and he knew Hatcher (*id.* at 54–55). Robinson testified that on the day of the shooting, Petitioner called and was screaming on the telephone, so Robinson gave the telephone to Deese (*id.* at 55–56). He testified that around dusk, he and Deese were sitting in their yard, and Petitioner pulled up in his truck with Hatcher in the passenger seat (*id.* at 58–59). He testified Petitioner opened the driver's door of the truck and said, "I am going to kill you mother-fuckers," and then pulled out a gun and shot (*id.* at 59). Robinson testified Deese stated she had been shot, so he shoved her back into a flower bed, and at the same time, he saw Petitioner reloading the shotgun (*id.* at 58–59). Robinson testified Petitioner was approximately forty (40) feet from Deese when he fired the shotgun (*id.* at 60). He testified he did not pull a weapon on Petitioner, nor did he do anything that would cause Petitioner to think he needed to shoot Deese (*id.* at 60–61). Robinson testified he called 911, and while he was on the telephone, Petitioner and Hatcher started beating him (*id.* at 60–62). Robinson testified he suffered two beatings from the men, and during one beating from Hatcher, Petitioner pointed the shotgun at his (Robinson's) head and told him he was going to kill him (*id.* at 62–63).

Donnie Wiggen, a corporal supervisor with the Santa Rosa County Sheriff's Office, testified that on night of the shooting, he was alerted by dispatch to a shooting on 2380 Belmont Street (Ex. G at 154–55). He testified he activated his sirens and drove to that address, arriving 2–3 minutes after the dispatch (*id.* at 156). He testified Mr. Robinson and Ms. Deese described the vehicle that Petitioner and Hatcher were in as a dark colored pick-up truck with a white camper (*id.* at 157, 177, 278). He testified he put out a "BOLO" for the vehicle over his radio (*id.* at 157). Wiggen testified he did not observe any weapons in the area of the shooting, but he did not search inside Robinson's residence (*id.* at 158–59). He testified he did not find any spent shells at the scene (*id.* at 158, 179). Wiggen testified Robinson and Deese told him and Detective Tynes where the suspects lived (*id.* at 160). Wiggen testified he heard on his radio that Detective Tynes and Deputy Sloan were at the residence described by Robinson and Deese (*id.* at 276). He testified he subsequently went to that residence and observed a vehicle matching the description of the BOLO in the back yard of Petitioner's mobile home (*id.* at 276–78).

Detective Tynes testified he responded to the scene of the shooting, and Mack Robinson told him the suspects lived on Timber Lane, a few streets from where the shooting occured (Ex. H at 201–02).  He testified that he arrived at Timber Lane and observed "a mobile-type home off the road" and a "fifth wheel" or type of mobile home/travel trailer behind it (*id.* at 201–02).  He testified Mack Robinson had described the residences to him (*id.*).  He testified he met Patty Hatch at the front door of the mobile home where Petitioner resided, and asked her if she knew where Petitioner was (*id.* at 202, 214).  She responded yes (*id.*).  Based upon the information she provided, Tynes made contact with Petitioner in one of the bedrooms of the mobile home (*id.* at 202–03).  Detective Tynes testified Ms. Hatch gave him and Detective Lio permission to search the mobile home, but they did not find a shotgun (*id.* at 203–04).  He testified they located Mr. Hatcher in his living quarters in the "fifth wheel" located behind the mobile home (*id.* at 204).  Mr. Hatcher was taken into custody that evening (*id.* at 163).  Detective Tynes testified law enforcement obtained a search warrant for Hatcher's residence the next day (*id.* at 205).  Tynes testified that during the search, officers discovered 12-gauge shotgun shells and other ammunition (*id.* at 211).  They also discovered a 12-gauge shotgun shell in a vehicle on the Timber Lane property, but the vehicle was not the same pick-up truck involved in the shooting (*id.* at 213).  Tynes testified officers searched Hatcher's residence and the area between that residence and the residence on Belmont where the shooting occurred, but they did not find a shotgun (*id.* at 217).  He testified they did not search Mack Robinson's property for a shotgun (*id.*).  Tynes testified that approximately 3–4 hours elapsed between the time Corporal Wiggen arrived at the scene on Belmont Street, and the time the first deputy arrived at Petitioner's residence (*id.* at 218–19).  He testified it was possible that someone could have disposed of the shotgun during that time (*id.* at 219).

Charlie Peters, a crime scene technician with the Santa Rosa County Sheriff's Office, testified he collected evidence from the scene of the shooting, including plastic wadding from a shotgun shell (Ex. G at 152, 189–90).  He testified he compared the wadding with the wadding inside one of the shotgun shells seized from Mr. Hatcher's residence, and the wadding was "very similar" (*id.* at 190–97).

Petitioner testified he called Mack Robinson the night of the shooting and then went to his home to buy marijuana (Ex. I at 281).  He testified he got out of his truck and retrieved a beer from the

console, when Robinson began screaming that Petitioner stole marijuana from him (*id.*). He testified Robinson threatened to tell Petitioner's wife, Patricia Hatch, that Petitioner smoked marijuana if Petitioner did not return the marijuana or pay for it (*id.* at 281–82). Petitioner testified Robinson then pointed a shotgun at him, so he dropped his beer and tried to snatch the shotgun from Robinson (*id.* at 282). Petitioner testified, "as we went to the ground, the gun went off" (*id.* at 282–83). Petitioner testified Robinson was on top of him hitting him, and his (Petitioner's) uncle, Mike Hatcher, pulled Robinson off him (*id.* at 283). He testified he and Hatcher then beat Robinson (*id.*). Petitioner testified he never picked up the shotgun (*id.* at 284). He denied he threatened to kill Robinson or Deese (*id.*). Petitioner testified he and Hatcher left Robinson's residence after the fight, and he never knew that Deese had been shot (*id.* at 286). Petitioner testified he did not own a shotgun, nor did he take one to Robinson's house (*id.* at 289). He testified he did not hide a shotgun that night; he did not give a shotgun to anyone else to hide; and to the best of his knowledge, Mike Hatcher did not hide a shotgun that night (*id.* at 290).

In light of the evidence that (1) Ms. Deese was shot with a shotgun, (2) she was shot while Petitioner and Hatcher were at the Robinson/Deese residence, (3) after the shooting, Petitioner and Hatcher went to their shared property where they lived in separate, but physically close, residences, and (4) wadding recovered from the scene of the shooting was "very similar" to wadding removed from an unspent shotgun shell found in Hatcher's residence, Petitioner failed to show a reasonable probability the trial court would have decided the suppression issue differently if defense counsel had provided more factual and/or legal support for his argument that the probative value of the shotgun shells and ammunition found in Hatcher's residence was outweighed by its prejudicial effect. Therefore, the state court's adjudication of this claim was not unreasonable under <u>Strickland</u>. Accordingly, Petitioner is not entitled to relief on Ground Two.

    C.    <u>Ground Three: "Trial counsel rendered ineffective assistance for failing to have redacted portions of the 911 recording on grounds of sympathy for the victim."</u>

Petitioner alleges defense counsel was ineffective for failing to seek redaction of portions of the audio-recording of Mack Robinson's telephone call to 911, on the ground that it was irrelevant and unduly prejudicial (doc. 1 at 10–12). Petitioner contends the State used the evidence in an attempt to show that he and co-defendant Hatcher had time to commit the offenses, leave the scene, wash their

hands of any gunshot residue, and hide the shotgun before law enforcement arrived, but the State could have presented other evidence to show this (*id.* at 11). He contends counsel should have moved to exclude portions of the recording in which Ms. Deese begged Petitioner to stop and not kill Robinson, on the ground that these portions were inflammatory, and the State admitted them for improper purposes, namely, to appeal to the jury's sympathy, depict the defense as unreasonable, and bolster the testimony of Mr. Robinson and Ms. Deese (*id.* at 11–12).

Petitioner additionally contends defense counsel should have objected to two of the prosecutor's comments during closing arguments (doc. 1 at 12). He identifies one comment as: "He [Mr. Robinson] wasn't intoxicated [during the 911 telephone call]. His testimony should be much more credible that Mr. Wacker's, who has a lot to lose, if he's convicted today." Petitioner contends this comment constituted improper bolstering of a State's witness (*id.*). He identifies the second comment as "He's telling her he's going down for a long time," when the prosecutor was referring to Petitioner's statements to Patricia Hatch during an audio-recorded telephone call while he was detained in the county jail (*id.*). Petitioner contends this comment improperly encouraged the jury to presume Petitioner's guilt instead of his innocence (*id.*). Petitioner contends the prosecutor's comments prejudiced the entire trial (*id.*). He states he raised this claim as Issue Five in his amended Rule 3.850 motion, and as Issue Three on appeal (*id.* at 10).

Respondent contends Petitioner did not properly exhaust the aspect of his claim relating to the prosecutor's comments during closing arguments, because Petitioner did not make those arguments in Issue Five of his Rule 3.850 motion, and raised it for the first time in his appellate brief (doc. 15 at 14–16). Therefore, to the extent Petitioner relies upon the prosecutor's comments to show prejudice, this argument is not exhausted (*id.*). Respondent contends the state court's adjudication of the exhausted portion of the claim was not contrary to or an unreasonable application of clearly established federal law (*id.* at 17–18).

        1.       Clearly Established Federal Law

The <u>Strickland</u> standard, set forth *supra*, governs this claim.

        2.       Federal Review of State Court Decision

Petitioner raised the redaction issue as Issue Five in his amended Rule 3.850 motion (Ex. S at 10–12). In Issue Eight, he contended counsel was ineffective for failing to object to prosecutorial

misconduct during closing argument, specifically improper bolstering of witnesses and interjecting a personal opinion regarding his guilt (*id.* at 18–20).

The state circuit court adjudicated the claims as follows, in relevant part:

> . . . he [Petitioner] claims counsel failed to have portions of the 911 call redacted where the operators are switching the call to get the victims appropriate help. Defendant alleges the victims are heard calling out for help out of pain and fear. He argues the playing of these portions of the calls was done to elicit sympathy.
>
> The 911 call demonstrated the sequence of events of the shooting of Deese, then her pleading with the co-defendants to stop while they committed the assault and battery on Robinson. (Exhibit F, pp. 76–81.) It was relevant to the time and circumstances of the offenses and the delay in law enforcement arriving at the scene, and counsel was not ineffective for failing to seek that portion of it redacted. (Exhibit G, pp. 351–352.) *See Cooper v. State*, 856 So. 2d 969, 980 (Fla. 2003).
> . . . .
>
> Defendant claims counsel was ineffective for failing to object to prosecutorial misconduct in closing argument which directly contributed to Defendant's convictions. Defendant argues the State improperly bolstered its witnesses' testimony and interjected its opinion as to the evidence, alleging the State characterized its witnesses' testimony as consistent and much more credible and referred to Defendant's version of events as unreliable, virtually ridiculous, and incredible. Taken in context, the State's comments were not improper bolstering or improper opinion but rather argument of the credibility of the witnesses based on the evidence presented. (Exhibit G, pp. 344–62, 393–404.) *See Miller v. State*, 926 So. 2d 1243, 1254–1255 (Fla. 2006).

(Ex. S at 91–92, 95). Petitioner argued these issues on appeal to the First DCA (Ex. T at 10–13). The appellate court affirmed the lower court's decision without written opinion (Ex. V).

> a.   Counsel's failure to seek redaction of portions of audio-recording of 911 call

Florida law permits the admission of relevant evidence unless the law provides otherwise. Fla. Stat. § 90.402. "Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence." *Id.* § 90.403. For Petitioner to succeed on his argument that the state court unreasonably applied Strickland, he must demonstrate that defense counsel had a meritorious basis for objecting to admission of those portions of the 911 audio-recording in which Ms. Deese is heard calling for help out of pain and fear, and begging Petitioner to stop and not kill

Robinson (doc. 1 at 11). The state court answered the question of whether counsel had a meritorious basis for objecting to these portions or seeking their redaction—the objection would have been overruled or a motion for redaction denied, because the evidence was relevant to the time and circumstances of the offenses and the delay in law enforcement arriving at the scene.[6] This court must abide by the state court's interpretation of state law. *See* Bradshaw v. Richey, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005); Mullaney v. Wilbur, 421 U.S. 684, 691, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975); Herring v. Sec'y, Dep't of Corr., 397 F.3d 1338 (11th Cir. 2005).[7]

In light of the state court's determination that the entirety of the audio-recording was admissible under state law, which is binding upon the federal habeas court, Petitioner failed to demonstrate the state court's denial of his ineffective assistance of counsel claim, based upon counsel's failure to seek redaction of the 911 recording, was an unreasonable application of Strickland.

     b. Counsel's failure to object to prosecutor's comments during closing arguments

Petitioner contends defense counsel should have objected to the following two comments by the prosecutor during closing arguments:

  (1)  "Mack Robinson says he threatened to kill him. Mack Robinson says that he was being held by Mr. Hatcher while Mr. Wacker pointed a gun at his head.

---

[6] In Cooper, the case cited by the state court, the Florida Supreme Court concluded that a tape of a child's 911 call did not constitute improper victim impact evidence, because it was "independently relevant to a host of facts regarding the time and circumstances of the murders." 856 So. 2d 980. Similarly, in Gibbs v. State, 904 So. 2d 432 (Fla. 4th DCA 2005), the defense objected to admission of an audio-recording of a neighbor's 911 call, including the murdered victim's husband's pleas for help, on the ground that it was unduly prejudicial due to its emotional impact. *Id.* at 436. The prosecutor used the recording as some evidence to disprove the defendant's suggestion that the shooting was accidental, in that it proved that the defendant fled after the shooting, leaving a dying victim. *Id.* The appellate court determined the recording was evidence tending to disprove that the shooting was accidental and "showed the context and time sequence of the events immediately following the shooting"; therefore, the trial court did not abuse its discretion by admitting it. *Id.*

[7] In Herring, the petitioner argued his counsel was ineffective for failing to make an objection, based on state law, to the introduction of non-statutory aggravating evidence at the penalty phase of his trial. 397 F.3d at 1354–55. The Florida Supreme Court concluded that the proposed objection would have been overruled and therefore counsel was not deficient. *Id.* The Eleventh Circuit held: "'The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done . . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'" *Id.* (quoting Agan v. Vaughn, 119 F.3d 1538, 1549 (11th Cir. 1997)).

He wasn't foggy. He wasn't intoxicated. His testimony should be much more credible than Mr. Wacker's, who has a lot to lose, if he's convicted today."

(2)    "If you have any doubts, think of the rest of that jail phonecall where he said he's going down for a long time this time. If he were innocent, he wouldn't be saying that."

(Ex. I at 353, 356–57).

Under Florida law, the standard for reviewing prosecutorial comments is the following:

Wide latitude is permitted in arguing to a jury. Logical inferences may be drawn, and counsel is allowed to advance all legitimate arguments. The control of comments is within the trial court's discretion, and an appellate court will not interfere unless an abuse of such discretion is shown. A new trial should be granted when it is "reasonably evident that the remarks might have influenced the jury to reach a more severe verdict of guilt than it would have otherwise done." Each case must be considered on its own merits, however, and within the circumstances surrounding the complained-of remarks.

Breedlove v. State, 413 So. 2d 1, 8 (Fla. 1982) (quoting Darden v. State, 329 So. 2d 287, 289 (Fla. 1976)) (other citations omitted). The prosecutor may not, however, "'inflame the minds and passions of the jurors so that their verdict reflects an emotional response to the crime or the defendant rather than the logical analysis of the evidence in light of the applicable law.'" Jones v. State, 612 So. 2d 1370, 1374 (Fla. 1993) (quoting Bertolotti v. State, 476 So. 2d 130 (Fla. 1985)). This state rule is essentially the same as the federal due process standard governing allegedly improper argument by the prosecution. A prosecutor may argue both facts in evidence and reasonable inferences from those facts. See Tucker v. Kemp, 762 F.2d 1496, 1506 (11th Cir. 1985) (citations omitted). But if the evidence is too insubstantial to support a reasonable inference, the prosecutor's comment will be deemed improper. Id. at 1507. Prosecutors must observe the distinction between the permissible practice of arguing evidence and suggesting inferences which the jury may reasonably draw from it and the impermissible practice of arguing suggestions beyond the evidence. See United States v. Simon, 964 F.2d 1082, 1086 (11th Cir. 1992) (citation omitted).

Further, the prosecutor is not limited to a bare recitation of the facts; he may comment on the evidence and express the conclusions he contends the jury should draw from the evidence. United States v. Johns, 734 F.2d 657, 663 (11th Cir. 1984). A prosecutor may comment on the uncontradicted or uncontroverted nature of the evidence and may point out that there is an absence of evidence on a

certain issue during closing argument to the jury. *See* <u>White v. State</u>, 377 So. 2d 1149 (Fla. 1980). Additionally, prosecutorial comment upon a general lack of defense evidence is permissible. *See* <u>Smiley v. State</u>, 395 So. 2d 235 (Fla. 1st DCA 1981).

Attempts to bolster a witness by vouching for his or her credibility are improper "if the jury could reasonably believe that the prosecutor indicated a personal belief in the witness' credibility." <u>United States v. Eyster</u>, 948 F.2d 1196, 1206 (11th Cir. 1991) (citing <u>United States v. Sims,</u> 719 F.2d 375, 377 (11th Cir. 1983)). A jury could believe that the prosecutor personally believed in the witness' credibility "if the prosecutor either places the prestige of the government behind the witness, by making explicit personal assurances of the witness' veracity, or the prosecutor implicitly vouches for the witness' veracity by indicating that information not presented to the jury supports the testimony." *Id.* (citation omitted). Thus, the court must examine whether (1) the prosecutor explicitly personally assured the witness' credibility, or (2) the prosecutor implicitly vouched for the witness' credibility by implying that evidence not presented to the jury supports the witness' testimony. <u>United States v. Castro</u>, 89 F.3d 1443, 1457 (11th Cir. 1996) (citing <u>Sims</u>, 719 F.2d at 377).

However, it should be noted that "[t]he prohibition against vouching does not forbid prosecutors from arguing credibility . . . it forbids arguing credibility based on the reputation of the government office or on evidence not before the jury." <u>United States v. Hernandez</u>, 921 F.2d 1569, 1573 (11th Cir. 1991). Furthermore, when the prosecutor voices a personal opinion but indicates this belief is based on evidence in the record, the comment is not improper. <u>United States v. Granville</u>, 716 F.2d 819, 822 (11th Cir. 1983) (finding no prosecutorial misconduct where prosecutor, in effort to support testimony of two government witnesses, only pointed to matters in evidence: the demeanor of one witness and testimony of support witnesses, as well as a tape recording corroborating the testimony of another) (citations omitted). Likewise, a prosecutor may reply to remarks, comments or assertions made by defense counsel. *See* <u>United States v. Young</u>, 470 U.S. 1, 11–13, 105 S. Ct. 1038, 84 L. Ed.2 d 1 (1985) (when prosecutor's comments are an "invited reply" in response to defense counsel's own remarks, and he "[does] no more than respond substantially in order to 'right the scale,' such comments would not warrant reversing a conviction") (citations omitted).

Finally, "the limits of proper argument find their source in notions of fairness, the same source from which flows the right to due process of law." <u>Houston v. Estelle</u>, 569 F.2d 372, 380 (5th Cir.

1978). "The relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" <u>Darden v. Wainwright</u>, 477 U.S. 168, 181, 106 S. Ct. 2464, 2471, 91 L. Ed. 2d 144 (1986) (quoting <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974)). Thus, to establish prosecutorial misconduct, a two-prong test must be satisfied: (1) the prosecutor's comments must have been improper; and (2) the comments must have rendered the trial fundamentally unfair. *See* <u>Eyster</u>, 948 F.2d at 1206 (citations omitted); <u>Brooks v. Kemp</u>, 762 F.2d 1383, 1400 (11th Cir. 1985) (en banc), *vacated on other grounds*, 478 U.S. 1016, 106 S. Ct. 3325, 92 L. Ed. 2d 732 (1986), *reinstated*, 809 F.2d 700 (11th Cir. 1987); <u>Dessaure v. State</u>, 891 So. 2d 455, 464–65 (Fla. 2004) (an order granting mistrial is required only when the error upon which it rests is so prejudicial as to vitiate the entire trial, making a mistrial necessary to ensure that the defendant receives a fair trial).

Upon review of the evidence adduced at trial and the entirety of the arguments of the prosecutor and defense counsel during closing arguments, the undersigned concludes—as did the state circuit court and the First DCA—that Petitioner has not shown that defense counsel's failure to object to the comments identified by Petitioner constituted deficient performance, or that there is a reasonable probability the outcome of Petitioner's trial would have been different if counsel had objected. Therefore, the state court's adjudication of Petitioner's claim was not an unreasonable application of <u>Strickland</u>.

IV.    CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 3rd day of October 2013.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**